**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4087
_____

JOSH FINKELMAN,
on behalf of himself and the Putative class,

Appellant

v.

NATIONAL FOOTBALL LEAGUE; NFL VENTURES, L.P.;
NFL PROPERTIES, L.L.C.; NFL VENTURES, INC.; NFL ENTERPRISES, L.L.C.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:14-cv-00096)
District Judge:  Honorable Peter G. Sheridan
_____

Argued July 12, 2017

Before: SMITH, *Chief Judge*, FUENTES, *Circuit Judge*, and STARK,[*]
*Chief District Judge*

(Opinion Filed: January 31, 2019)

_____

[*] Honorable Leonard P. Stark, Chief Judge of the United States District Court for the District of Delaware, sitting by designation.

Greg M. Kohn, Esq.
Bruce H. Nagel, Esq. **[ARGUED]**
Robert H. Solomon, Esq.
Andrew I. Pepper, Esq.
Diane E. Sammons, Esq.
Nagel Rice
103 Eisenhower Parkway
Roseland, NJ 07069
*Attorney for Appellants*


Karen A. Confoy, Esq.
Steven J. Daroci, Esq.
Fox Rothschild
997 Lenox Drive
Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ 08648


Jonathan D. Pressment, Esq. **[ARGUED]**
William Feldman, Esq.
Haynes & Boone
30 Rockefeller Center
26th Floor
New York, NY 10112
*Attorneys for Appellees*

_____

OPINION OF THE COURT
_____


FUENTES, *Circuit Judge*.

Plaintiff Josh Finkelman brought this suit against the National Football League ("NFL") in 2014, alleging that the NFL's ticket distribution for the Super Bowl that year violated the New Jersey Ticket Law. According to Finkelman, the NFL designated 99%

of Super Bowl tickets for distribution to NFL teams, companies, broadcast networks, media sponsors, the Super Bowl host committee, and league insiders. The remaining 1% of tickets were sold through a lottery system available to the general public. Finkelman alleges that this practice violates Section 35.1 of the Ticket Law, which made it unlawful for a person "who has access to tickets to an event prior to the tickets' release for sale to the general public" to withhold more than 5% of those tickets.[1]

## I. Background and Prior Opinions

We first assessed this case in 2016 and concluded that Finkelman lacked standing because he had not alleged that the NFL's allegedly unlawful practice of withholding more than 5% of the available tickets for the Super Bowl caused price inflation on the resale market. We then remanded to the District Court to consider whether amendment was appropriate. The District Court granted Finkelman leave to amend, and then again dismissed the case. In 2017, the case came before us for the second time. We considered both the standing issue and the District Court's conclusion that Finkelman did not allege a violation of the Ticket Law because the NFL's actions were better understood as "allocating" tickets to NFL teams and league insiders rather than "withholding" tickets from the general public. While we determined that Finkelman had met the Article III standing requirements, we certified the second issue to the New Jersey Supreme Court:

> (1) Does Plaintiff Josh Finkelman properly plead a claim under the New Jersey Ticket Law, N.J. Stat. Ann. § 56:8-35.1?

---

[1] N.J. Stat. Ann. § 56:8-35.1.

3

## II.    Certification

The New Jersey Supreme Court accepted the certified question on February 1, 2018,

but reformulated it pursuant to New Jersey Court Rule 2:12A-2 as follows:

> (1)     Is the term "person[] who has access to tickets to an event prior to the tickets' release for sale to the general public," as that term is used in [Section 35.1], limited to ticket brokers and resellers?
>
> (2)     Are tickets to an event that are sold to winners of a lottery "release[d] for sale to the general public" within the meaning of [Section 35.1], and, if so, are tickets distributed to selected entities "[withheld] . . . from sale to the general public" within the meaning of [Section 35.1]?[2]

In a thorough opinion issued January 9, 2019, the New Jersey Supreme Court

answered the first question in the negative, concluding that the plain language of the statute

made clear that the legislature intended that portion of the Ticket Law to include any person

or entity with access to tickets prior to release, not only brokers and resellers.[3]  Next, it

determined that the ticketing scheme at issue here, in which the NFL ran a lottery to allow

the general public access to 1% of tickets to the Super Bowl, constituted a "release for sale

to the general public."[4]  The court reasoned that the lottery winners were members of the

general public and that nothing in the Ticket Law suggested that a "release" required that

tickets be made available "to any member of the public who wants to purchase them."[5]

---

[2] *Finkelman v. Nat'l Football League*, No. 080501, 2019 WL 149446, at *3 (N.J. Jan. 9, 2019).

[3] *Id.* at *7.

[4] *Id.* at *8.

[5] *Id*.

4

Finally, the New Jersey Supreme Court turned to the meaning of the Ticket Law's prohibition on withholding tickets from sale to the general public. The court concluded that the statute was designed not to impose a limit on withholding any tickets, but to limit "only the withholding of the subset of tickets that would otherwise be made available in a public sale."[6] Because 99% of the Super Bowl tickets were "never destined to be part of a public sale," the New Jersey Supreme Court concluded that the NFL's ticket selling scheme did not run afoul of the Ticket Law.[7]

## III. Analysis

There is little left for us to do. Applying the conclusions of the New Jersey Supreme Court, it is clear that Finkelman does not have a claim against the NFL, and the District Court appropriately concluded that the Complaint could not survive under Federal Rule of Civil Procedure 12(b)(6).

## IV. Conclusion

For the reasons set forth above, we will affirm the decision of the District Court.

---

[6] *Id.* at *9.
[7] *Id.*